CONSTANCE P. NICHOLS, PLAINTIFF-APPELLANT, v. BOARD OF EDUCATION OF THE CITY OF JERSEY CITY, HUDSON COUNTY, NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 21, 1960—Decided January 10, 1961.

Before Judges CONFORD, FREUND and KILKENNY.

*Mr. Alvin Weiss* argued the cause for appellant (*Mr. Carl R. Fenstemaker,* attorney).

*Mr. George R. Blaney* argued the cause for respondent (*Mr. John J. Witkowski,* attorney).

The opinion of the court was delivered by

KILKENNY, J. A. D. This appeal was brought under *R. R.* 4:88–8 to review a decision of the State Board of Education, which affirmed the dismissal of plaintiff's petition by the Commissioner of Education of New Jersey.

The present case is a sequel to earlier litigation between the same parties, involving the same basic claim by plaintiff for preference in appointment as an assistant superintendent of schools in Jersey City. In that original action, *Nichols*

*v. Board of Education of Jersey City,* 9 *N. J.* 241, 243 (1952), the Supreme Court summarized the facts then existing as follows:

"The facts, stipulated in this case, are: that petitioner was appointed a teacher in the Jersey City School System on September 1, 1928; that she acquired tenure as a teacher in said system in September, 1931, and had tenure as a teacher, when, by the city board's resolution of December 19, 1946, she was appointed assistant superintendent of schools, and on the date, January 1, 1947, when she entered employment in that capacity; that petitioner is a citizen of the United States of America and holds a state teacher's certificate; that petitioner was employed as assistant superintendent of schools from January 1, 1947, to December 15, 1949, during which time her state teacher's certificate was in full force and effect; that the city board on or about December 15, 1949, by resolution of that date, for reasons of economy, abolished the position of petitioner as assistant superintendent of schools; and that on or about December 15, 1949, petitioner was assigned to teaching at school No. 22. It appears that petitioner, under protest, accepted this classroom teaching assignment by letter of December 16, 1949. It also appears that by letter of the same date she protested the abolition of her position as an assistant superintendent of schools."

The essential holding in that 1952 decision was that petitioner was not eligible for placement on a preferred list for re-employment as an assistant superintendent, her position as such having been abolished on December 15, 1949 *for reasons of economy,* rather than natural diminution of pupils in the school district, because (a) there was no statute in existence, when her position was so abolished, affording such re-employment protection to an assistant superintendent under such circumstances; and (b) *L.* 1951, *c.* 292, amending *R. S.* 18:13–19, and providing for placement on such a preferred list, even where dismissal is for reasons of economy, was not retroactive in nature and did not enure to petitioner's benefit, since her position as assistant superintendent was abolished for economy prior to its adoption. The qualified statement of the Supreme Court, in that decision, that Mrs. Nichols had tenure as assistant superintendent, on the basis of the limited question presented, will be considered hereinafter.

Since that 1952 decision, the following additional facts appear. Dr. Richard T. Beck, whose appointment as an assistant superintendent of schools in charge of elementary education was also effective as of January 1, 1947, resigned on March 1, 1954. Plaintiff's application for appointment to fill the vacancy occasioned by that resignation was rejected by the respondent board. No one was then appointed to Dr. Beck's job. On September 15, 1955 the local board of education adopted a series of resolutions, all effective July 1, 1955, (1) abolishing a number of supervisory positions, including those of "Assistant Superintendent of Schools in charge of Elementary Education" and "Director of Personnel"; (2) establishing several new supervisory positions, including that of "Assistant Superintendent of Schools in charge of Personnel and Elementary Education"; and (3) promoting Maurice J. O'Sullivan, who had been director of personnel since 1950, to the newly created dual position of assistant superintendent of schools in charge of personnel and elementary education "at no increase in salary." O'Sullivan's annual salary at that time was $10,100; and that of Mrs. Nichols, then employed as a teacher, was $6,340.

Thereupon, plaintiff, by her petition of December 14, 1955, requested the Commissioner of Education to order the Jersey City Board of Education to appoint or reinstate her as assistant superintendent of schools in the place and stead of Maurice J. O'Sullivan; and to direct the board to account for and pay to her the sums withheld from her by reason of its failure to appoint her as assistant superintendent of schools on September 15, 1955, when O'Sullivan was appointed.

In the long interim between the filing of her petition on December 14, 1955 and the Commissioner's decision on July 24, 1959, two important changes were made by city board resolutions in O'Sullivan's status, which we interpose here for chronological coherence. On July 29, 1957 the duties of the division of personnel were taken away from O'Sullivan and assigned to the superintendent of schools;

and O'Sullivan's position suffered a title change from its dual aspect to the simpler and earlier form of "Assistant Superintendent of Schools in charge of Elementary Education." Then, on July 1, 1959, O'Sullivan's position as "Assistant Superintendent of Schools in charge of Elementary Schools" [sic] was abolished *for reasons of economy,* and the duties of this position were assigned to the superintendent of schools. The position has not been re-established.

At this point, we observe that the primary relief sought by plaintiff, namely, appointment or reinstatement as assistant superintendent of schools "in the place and stead of Maurice O'Sullivan," cannot be ordered at this time, because the position is presently non-existent. That portion of plaintiff's case is now moot. However, we must still consider her claim for secondary relief, *i. e.,* salary allegedly lost by reason of the board's failure to appoint her assistant superintendent on September 15, 1955.

In dismissing Mrs. Nichols' 1955 petition the Commissioner determined that she never held the necessary and appropriate certificate required by the rules of the State Board of Education at the time of her appointment in 1946, or while she held the position of assistant superintendent. These rules, promulgated in 1944, required a principal's or a supervising principal's certificate as a qualification for appointment as an assistant superintendent. The 1948 rules, effective September 1, 1948, required an administrator's certificate. Mrs. Nichols never held those certificates, either then or even now. She had only a state teacher's certificate, when she was appointed in 1946. Accordingly, the Commissioner ruled that she never acquired tenure in respondent's school system as assistant superintendent, because she never held the proper certificate for the position.

On appeal, the State Board of Education decided on May 4, 1960 that the Commissioner's dismissal of plaintiff's 1955 petition was correct. However, it disagreed with the reason upon which the Commissioner's determination was based, that Mrs. Nichols never held a proper certificate qualifying

her for the appointment as an assistant superintendent. The State Board concluded that she was statutorily qualified by reason of her possession of a "state teacher's certificate," when she was appointed on December 19, 1946. *R. S.* 18:6–41 then plainly provided:

"No person shall be appointed superintendent of schools, or assistant superintendent, under the provisions of this article, unless he shall hold *a state teacher's certificate.*" (Emphasis supplied)

As above noted, the State Board's 1944 rules required a principal's or supervising principal's certificate, which Mrs. Nichols did not have. The State Board held, however, that its 1944 rules enlarging upon the statutory requirements were *ultra vires* and void.

We concur in the State Board's finding that Mrs. Nichols, as holder of only a state teacher's certificate, possessed sufficient statutory qualification to validate her 1946 appointment as assistant superintendent. The Supreme Court also stated in the *Nichols* case, *supra,* 9 *N. J.,* at *page 245*:

"On December 19, 1946, when she was appointed, and on January 1, 1947, when she became employed, as an assistant superintendent of schools, petitioner was qualified to hold the position under *R. S.* 18:6–41."

It is very significant that *R. S.* 18:6–41 was amended by *L.* 1947, *c.* 148, effective May 12, 1947, to read:

"No person *shall be appointed* superintendent of schools, or *assistant superintendent of schools,* under the provisions of this article, *or act as, or perform the duties of,* a superintendent of schools or *an assistant superintendent of schools* as prescribed by the rules and regulations of the State Board of Education, *unless he shall hold an appropriate certificate as prescribed by the State Board of Education.*" (Emphasis supplied)

This substantial statutory change was evidently curative of the State Board's previous lack of rule-making power to require an "appropriate certificate," and not merely confirmatory of power theretofore exercised contrary to the plain

language of *R. S.* 18:6–41. It exhibited a legislative awareness of a need for raising the standards of qualification from a mere "state teacher's certificate" to an "appropriate certificate as prescribed by the State Board of Education."

We observe, too, that this 1947 amendment also modified *R. S.* 18:6–41, which previously dealt only with appointment, by requiring this appropriate State Board certificate not only as a condition precedent to a valid appointment, but also to *"act as, or perform the duties of * * * an assistant superintendent of schools as prescribed by rules and regulations of the State Board of Education * * *."* (Emphasis supplied) This is particularly noteworthy when we realize that assistant superintendents did not enjoy any tenure rights in 1947 and were thus subject to discharge at any time and without cause.

As an indication of our Legislature's procedure in a situation where a certification statute is not intended to be retrospective, it would be profitable to compare the provisions presently under consideration with another section of the same legislative revision of our school laws in 1947. In *N. J. S. A.* 18:14–56.1, apparently for the first time, certificates became mandatory as a condition precedent to appointment as a school nurse. The certificates were designated "appropriate certificates," and were to be issued by the State Board of Examiners under rules and regulations prescribed by the State Board of Education. Note, however, that the statute reads, "No person shall *hereafter* be appointed * * *" (emphasis added) unless that person procures a certificate. Compare *N. J. S. A.* 18:6–41, which not only omits the word "hereafter," but also goes further than mere reference to future appointments—it provides that no person shall "act as, or perform the duties of * * *" an assistant superintendent unless appropriately certified, a seeming reference to those who were then engaged as administrators under the prior law which required them to hold only teaching certificates. We also note the provision, with reference to nurses' certificates, of *N. J. S. A.* 18:14–56.3,

which expressly prohibits the dismissal of any nurse appointed prior to the passage of this act for failure to obtain a certificate.

The State Board rested its decision on the premise that Mrs. Nichols, though qualified when appointed, never acquired *tenure* as an assistant superintendent. She argues that the Supreme Court decided in 1952 that she had tenure, thus making this phase of the controversy *res adjudicata*. It is true that the Supreme Court did then hold that she had tenure, but only on the basis of the limited question submitted for determination, and with the express reservation by the Supreme Court that it had given no consideration to the effect, if any, of *L*. 1947, *c*. 148, quoted above on her claim of tenure. The limited question submitted and answered in the affirmative was whether petitioner could "tack" her prior years of service *as a teacher* in the Jersey City school system to her less than three years service as an assistant superintendent to make up the three years needed under *N. J. S. A*. 18:13–16 for tenure as an assistant superintendent. The allowance of "tacking" did not dispose of the present issue.

█ It is clear that the plaintiff did not acquire tenure when she was appointed assistant superintendent in 1946, despite her many prior years of service in the same school system, because there was no statute at that time granting tenure to assistant superintendents. Tenure was first provided for assistant superintendents by *L*. 1948, *c*. 470, effective October 29, 1948 (*N. J. S. A*. 18:13–16.1). But, as the State Board points out, prior to this Tenure Act of 1948, the Legislature had raised the standards of qualification for appointment and service as an assistant superintendent by *L*. 1947, *c*. 148. The State Board's rules, effective September 1, 1948, also prior to the effective date of the 1948 Tenure Act, required an "Administrator's Certificate" before one could be appointed or act as an assistant superintendent. Mrs. Nichols never held such a qualifying certificate. Hence, the State Board reasons, and we agree,

that she was not entitled to tenure, because she never measured up to the new increased standards of qualification duly adopted by the Legislature and promulgated by the State Board prior to the 1948 act which conferred tenure rights. This conclusion does not contravene the Supreme Court's 1952 decision, but interprets the effect of *L.* 1947, *c.* 148, which the court then expressly reserved.

As noted above, O'Sullivan's position as an assistant superintendent having been abolished for reasons of economy on July 1, 1959, and not having been re-established, plaintiff's petition for an order directing the city board to appoint or reinstate her "in the place and stead of O'Sullivan" cannot be granted. Her claim for secondary relief, in the form of money allegedly lost by her, by reason of the board's failure to appoint her on September 15, 1955, instead of O'Sullivan, must also be denied, and not only because, as we have concluded above, she did not have tenure. Even if all her assumptions of fact were true, *viz.* (1) her *tenure* as assistant superintendent, (2) O'Sullivan's *non-tenure* in that position when appointed, and (3) O'Sullivan's 1955 appointment was to fill a *vacancy* caused by the resignation of Dr. Beck on March 1, 1954, she has still failed to establish a right to the secondary, monetary relief for two main reasons.

■ As a first reason, we observe that the plaintiff had no statutory, or other, preferential right of re-employment, in the event of a subsequently occurring vacancy in the position of assistant superintendent of schools. Her lack of *statutory* preference was established by the Supreme Court, as far back as 1952, in the first *Nichols* case, *supra,* and that ruling is *res adjudicata* in this respect. But she bases her claim for preferment over O'Sullivan on the following *judicial* declaration in *Downs v. Board of Education of Dist. of Hoboken,* 13 *N. J. Misc.* 853, 181 *A.* 688 (*Sup. Ct.* 1935):

"While in the interest of economy reduction in the number [of teachers] may be made, those having tenure should have a *preference* in reappointment *where vacancies occur.*" (Emphasis supplied)

However, in the subsequent case of *Downs v. Board of Education of Dist. of Hoboken,* 126 *N. J. L.* 11 (*Sup. Ct.* 1940), affirmed opinion below *Schlank v. Board of Education,* 127 *N. J. L.* 602 (*E. & A.* 1942), the above observation in the earlier *Downs* case was held inapplicable to "subsequently occurring vacancies." Accordingly, in the absence of a statute, tenure teachers dismissed in 1932 for reasons of economy had no preferential right of appointment over non-tenure teachers to fill vacancies occurring in 1940. A 1935 statute, *L.* 1935, *c.* 126, giving such preferential right in the case of subsequently occurring vacancies, was held not retrospective to a case of teachers discharged for economy in 1932 before its adoption.

As Justice Heher pointed out in the later *Downs* case, at 126 *N. J. L., p.* 12, the observation in the earlier decision, that teachers having tenure should have a preference in re-appointment where vacancies occur, "must needs be viewed in the light of the question before the court for determination." In *Downs* tenure teachers had been dismissed "in the guise of economy," while non-tenure teachers were retained. The Supreme Court, *Downs v. Board of Education,* 12 *N. J. Misc.* 345 (1934), affirmed *Flechtner v. Board of Education,* 113 *N. J. L.* 401 (*E. & A.* 1934), had ordered seven tenure teachers re-employed in place of seven non-tenure teachers, who were retained to fill vacancies. The board thereupon pretended to "discharge" the seven non-tenure teachers to comply with the court order, and then immediately re-engaged them as "special substitute teachers," so that, in effect, they were continuously employed. In the judicial declaration relied upon in 13 *N. J. Misc.* 853, *supra,* as Justice Heher clearly sets forth in the later decision, the court was referring to *existing vacancies* which the board was filling with non-tenure teachers by "the merest subterfuge to defeat the legislative purpose" and the judgment itself. With that clarification, the later *Downs* case decided that, absent an applicable statute, tenure teachers discharged

for economy in 1932 did not enjoy preference in re-employment over non-tenure teachers as to 1940 vacancies.

By analogy, the later *Downs* decision is authority for the conclusion that Mrs. Nichols, whose position as assistant superintendent was abolished on December 15, 1949 for economy, even if she then had tenure, would not, absent an applicable statute, have preference over a non-tenure appointee to fill a vacancy in that position in 1955. As in *Downs,* where the intervening 1935 enactment was held inapplicable to teachers discharged before its adoption, so in this *Nichols* case, our Supreme Court has already ruled that the intervening 1951 statute, conferring preferential rights of re-employment, is not retrospective and does not enure to Mrs. Nichols' benefit. Since plaintiff did not have the right to be appointed in the place and stead of O'Sullivan, she has no valid claim for any salary differential by reason of the board's failure to appoint her in 1955.

As a second reason for denying plaintiff's secondary claim for a money judgment against the city board, we conclude that the plaintiff has failed to present necessary proofs in that regard. She has chosen to submit the matter to the Commissioner without any testimony, on a meagre paper record consisting only of her verified petition, the board's answer, affidavits by herself and the board's opposing affidavits of the superintendent of schools and Dr. O'Sullivan, and copies of pertinent board resolutions. At no time has she challenged the good faith or reasons of economy of the board in abolishing her position in 1949, or Dr. Beck's position in 1955, or the establishment of the dual position of assistant superintendent and director of personnel in 1955. Her sole contention is one of preference in re-appointment.

There is no evidence of how much monetary loss, if any, she sustained by reason of the board's failure to appoint her an assistant superintendent on September 15, 1955, in the place and stead of O'Sullivan. The proofs in this respect are left to pure speculation. We do not know what her salary would have been, either as assistant superintendent alone,

if the board had appointed her, or in the dual position later created, as against what her salary was as a teacher, during the four-year period when O'Sullivan occupied the post. We know that O'Sullivan's appointment to the dual position of "Assistant Superintendent of Schools in charge of Personnel and Elementary Education" was expressly "at no increase in salary" over his former position of director of personnel. Therefore, the additional duties and title of an assistant superintendent in charge of elementary education brought no additional salary to O'Sullivan. What monetary emoluments, then, did O'Sullivan enjoy by the appointment, which otherwise might have enured to the plaintiff? Was she entitled to this dual position over O'Sullivan, who had been director of personnel since 1950? What would her salary have been, as an assistant superintendent, alone, since O'Sullivan was promoted to do both jobs without any increase in salary? The record supplies no answers to these questions.

Finally, we know from supplemental proofs submitted, by leave of the court, following oral argument that O'Sullivan's annual salary as of July 1, 1960 was only $8,400, while plaintiff's annual salary as of May 16, 1960, when the board promoted her to the position of supervisor—general methods, lower primary grades, was $8,440. Thus, ironically, the plaintiff now receives more than O'Sullivan. The deficiency in plaintiff's proofs and the speculative factors involved make impossible any determination of possible pecuniary loss suffered by her, even if she was rightfully entitled to the appointment in 1955. However, we are satisfied that she was not legally entitled to such appointment for the reasons above stated.

Accordingly, the decision of the State Board of Education is affirmed.